FEB 17 2004

FILED
2004 FEB 24 P 4: 24

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY HANNAH,
Inmate #263635

**304CV314 JBA**

Plaintiff

-against-

DR. GANPAT S. CHOUHAN,
DR. TATYANA KATSNELSON,
DR. SHARRON LEE LAPLANTE,
DR. THOMAS WAGNER, and
BARBARA LAFRANCE,
sued in their individual capacities

Defendants

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. This is a civil rights action filed by Anthony Hannah, a Connecticut inmate, for monetary damages under 42 U.S.C. § 1983. The plaintiff's constitutional rights were violated by the failure to provide him with medical treatment to remove a foreign object from above his eye.

1

## JURISDICTION

2. This action is brought to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (a) (3).

## PARTIES

3. The plaintiff, Anthony Hannah, is a citizen of Connecticut. He is sentenced to the custody of the Connecticut Department of Correction (hereinafter "DOC") and currently is housed at MacDougall-Walker Correctional Institution in Suffield, Connecticut. His inmate number is 263635.

4. Defendant Dr. Ganpat S. Chouhan, at all times relevant to this complaint, was employed as a physician by Correctional Managed Health Care (hereinafter "CMHC"), which is part of the University of Connecticut Health Center (hereinafter "UConn"). CMHC has a contract with the DOC to provide medical services to inmates incarcerated in Connecticut's prisons. He is sued in his individual capacity.

5. Defendant Dr. Tatyana Katsnelson, at all times relevant to this complaint, was employed as a physician by CMHC. She is sued in her individual capacity.

6. Defendant Dr. Sharron Lee LaPlante, at all times relevant to this complaint, was employed as a physician by CMHC. She is sued in her individual capacity.

2

7. Defendant Dr. Thomas Wagner, at all times relevant to this complaint, was employed by CMHC as an optometrist. He is sued in his individual capacity.

8. Defendant Barbara LaFrance, at all times relevant to this complaint, was employed as a nurse by CMHC. She is sued in her individual capacity.

## FACTS

9. At all times mentioned herein, each defendant was acting under color of state law.

10. On July 14, 2001, while housed at the Cheshire Correctional Institution, the plaintiff was involved in a fight with another inmate. During the fight, the plaintiff was stabbed above the left eye with a pencil.

11. The plaintiff received medical treatment immediately after the fight, and he was examined by Dr. Joseph Esposito in the prison medical unit three days later. The plaintiff was diagnosed as having sustained a superficial laceration to the left upper eyelid, a peri-orbital contusion and a sub-conjunctiva hemorrhage to the left eye with probable inflamation of the iris. An antibiotic and eye drops were prescribed.

12. An X-ray, taken on July 19, 2001, found no evidence of an orbital fracture.

13. On July 23, 2001, the plaintiff was transferred to Radgowski Correctional Institution in Uncasville, Connecticut. At an intake health screening, the plaintiff reported that the end of the pencil had broken off when it hit bone during the attack by the other

inmate. He was advised to continue taking the prescribed medication.

14. The plaintiff suffered from recurrent swelling of the left eyelid, along with pain and infectious drainage. At various times during the period from late July through late October 2001, defendants Chouhan and Wagner treated him for those symptoms but took no steps to determine whether a part of the pencil had been retained in the eyelid.

15. On October 29, 2001, the plaintiff was released from DOC custody.

16. After his release, the plaintiff went to Hartford Hospital for treatment.

17. A CT scan performed at Hartford Hospital on December 28, 2001, found a three-centimeter-long, wire-like foreign body in the plaintiff's left orbit, the bony cavity containing the eyeball.

18. The plaintiff was not able to arrange for removal of the foreign body because he returned to DOC custody a month later, on January 30, 2002.

19. The plaintiff advised prison medical staff about the results of the CT scan.

20. The plaintiff continued to experience swelling, pain and infectious drainage. At various times after the plaintiff's return to incarceration, defendants Chouhan, Katsnelson and LaPlante treated him for those symptoms.

21. The plaintiff advised defendants Chouhan, Katsnelson and LaPlante about the results of the CT scan taken at Hartford Hospital. Despite that information and notations in the plaintiff's medical records indicating that a foreign body could be felt, defendants

Chouhan, Katsnelson and LaPlante failed to obtain the plaintiff's records from Hartford Hospital, order another CT scan, refer the plaintiff to an ophthalmologist or otherwise take any steps to have the foreign body removed.

22. On August 23, 2002, nearly eight months after the plaintiff became reincarcerated, defendant Wagner sent a request to Utilization Review Committee (hereinafter "URC") asking that the plaintiff be sent for an ophthalmology evaluation. The URC is a panel of CMHC physicians who decide whether treatment recommendations from prison doctors will be followed.

23. On September 10, 2002, the URC denied the request for an ophthalmology evaluation. Instead, it recommended that defendant Wagner contact Hartford Hospital for the results of the CT scan.

24. On September 25, 2002, while looking in a mirror, the plaintiff saw something sticking out of the wound above his eye. Using his fingers, the plaintiff was able to pull out a portion of a pencil point that had been split down the middle. The remainder of the pencil point remained in the wound above the plaintiff's eye.

25. A prison doctor advised the plaintiff to apply hot water to his wound and to cover the wound with gauze.

26. The plaintiff told defendant LaFrance that the water in his cell was not hot enough to comply with the doctor's order.

5

27. Defendant LaFrance failed to take action in a timely manner to provide the plaintiff with access to hot water. Despite repeated requests, defendant LaFrance failed to supply the plaintiff with gauze and with tape that he could use to keep the gauze in place. She also failed to obtain the plaintiff's records from Hartford Hospital.

28. On November 12, 2002, the URC approved a request that the plaintiff be sent to an ophthalmologist. The URC noted that defendant Wagner had failed to provide the plaintiff's records from Hartford Hospital, as the URC had requested on September 10, 2002.

29. On December 17, 2002, the plaintiff was examined by an ophthalmologist at UConn. The ophthalmologist concluded that another CT scan was necessary before a decision could be made about whether the plaintiff would be referred to an orbital specialist or a surgeon.

30. Before further steps could be taken, the remainder of the pencil point came closer to the surface and was removed by the plaintiff. The removal took place nearly a year and a half after the plaintiff was stabbed and almost a year after he returned to DOC custody.

## PREVIOUS LAWSUITS

31. The plaintiff has not begun other lawsuits in state or federal court dealing with the same facts involved in this action.

32. The plaintiff has not filed any other lawsuits related to the conditions of his confinement.

## PREVIOUSLY DISMISSED ACTIONS OR APPEALS

33. The plaintiff has not brought any civil actions or appeals that were dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted.

## ADMINISTRATIVE REMEDIES

34. At the time of the events that gave rise to this action, DOC Administrative Directive 9.6 specifically stated that an inmate could not challenge medical treatment and diagnosis decisions through the inmate grievance procedure. Therefore, no administrative remedies were available to the plaintiff.

## CLAIM FOR RELIEF

35. Each of the defendants demonstrated deliberate indifference to the plaintiff's serious medical needs.

36. The actions of the defendants set forth above violated the plaintiff's right not to be subjected to cruel and unusual punishment, as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

37. As a result of the actions of the defendants, the plaintiff suffered physical injury and pain, mental anguish and emotional distress.

WHEREFORE, the plaintiff claims:

A. Compensatory damages in the amount of $200,000.00;

B. Punitive damages;

C. Costs, expenses and attorney's fees;

D. Any other relief as law and equity may provide.

### JURY DEMAND

The plaintiff wishes to have a jury trial.

THE PLAINTIFF

Anthony Hannah
Inmate #263635
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06080

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information in the complaint is true and correct.

Executed at Suffield, Connecticut, on this 11 day of February, 2004.

*Anthony Hannah*

Although not appearing herein, the undersigned
assisted in the preparation of this complaint:

Richard P. Cahill, Esq.
Schulman & Associates
Inmates' Legal Assistance Program
78 Oak Street, P.O. Box 260237
Hartford, CT 06126-0237
Tel: (860) 246-1118
Fax: (860) 246-1119