```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

**ANTHONY HANNAH**                   :

    v.                              :   No. 3:04cv314 (JBA)
                                                 PRISONER

**DR. GANPAT S. CHOUHAN, et al.**[1]  :

### RULING ON MOTION TO DISMISS & SCHEDULING ORDER

The plaintiff, Anthony Hannah, is an inmate confined at the Carl Robinson Correctional Institution in Enfield, Connecticut. He filed this civil rights action pro se pursuant to 42 U.S.C. § 1983. He alleges that the defendants failed to remove a pencil point from his left eye for over a year. Pending is a motion to dismiss filed by the defendants. For the reasons that follow, the motion is denied.

I. Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).

---

[1] The named defendants are Dr. Ganpat S. Chouhan, Dr. Tatyana Katsnelson, Dr. Sharron Lee Laplante, Dr. Thomas Wagner and Barbara LaFrance.

"The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted).  In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II.  Facts

The court accepts as true the following facts, taken from the complaint.  On July 14, 2001, at Cheshire Correctional Institution, the plaintiff was involved in a fight with another inmate who stabbed him in the left eye with a pencil.  Medical personnel at the facility provided the plaintiff with medical treatment and three days later, Dr. Esposito examined the plaintiff.  Dr. Esposito diagnosed the plaintiff as suffering from a superficial laceration to the left upper eyelid, a peri-orbital contusion and a sub-conjunctiva hemorrhage to the left eye with probable inflammation of the iris. Dr. Esposito prescribed antibiotics and eye drops.

On July 19, 2001, x-rays of the plaintiff's eye revealed no orbital fracture.  In July 23, 2001, the plaintiff transferred to Radgowski Correctional Institution.  The plaintiff reported to medical personnel that the end of a pencil had broken off in his eye socket during a fight with another inmate at Cheshire.  Medical personnel advised the plaintiff to continue taking the prescribed medication.  The plaintiff experienced swelling of the left eyelid, pain and infectious drainage from the site where the pencil had entered his eye socket.  From July 2001 until October 2001, defendants Chouhan and Wagner treated the plaintiff for these symptoms, but failed to determine whether a piece of the pencil remained in the plaintiff's eye.

On October 29, 2001, prison officials released the plaintiff from custody.  On December 28, 2001, a CT scan performed at Hartford Hospital revealed a wire-like foreign body in the plaintiff's left orbit.  The plaintiff returned to the custody of the Department of Correction before he could arrange for the removal of the foreign body.

Upon his re-incarceration on January 30, 2002, the plaintiff informed prison officials of the results of the CT scan.  The plaintiff continued to experience swelling of the left eyelid, pain and infectious drainage from the left eye.  On various occasions, defendants Chouhan, Katsnelson and LaPlante treated him for the symptoms.  The plaintiff informed defendants  Chouhan, Katsnelson

and LaPlante that a CT scan had been performed at Hartford Hospital, but they failed to retrieve the CT scan results, order another CT scan or refer the plaintiff to an ophthalmologist.

On August 23, 2002, defendant Wagner submitted a request for an ophthalmology evaluation for the plaintiff to the Utilization Review Committee ("URC").  On September 10, 1992, the URC denied the request and directed defendant Wagner to retrieve the results of the CT scan from Hartford Hospital.

On September 25, 2002, the plaintiff was able to pull a portion of the pencil point out of the wound above his left eye.  A physician advised the plaintiff to apply hot water to the wound and cover it with gauze.  The plaintiff informed defendant LaFrance that the water in his cell was not hot enough to comply with the physician's instructions.  Defendant LaFrance failed to provide the plaintiff with hot water.  The plaintiff asked defendant LaFrance for gauze and tape to keep the gauze in place.  Defendant LaFrance failed to provide the plaintiff with gauze or tape and failed to obtain plaintiff's medical records from Hartford Hospital.

On November 12, 2002, the URC approved a request that the plaintiff be evaluated by an ophthalmologist and noted that defendant Wagner had failed to secure the medical records from Hartford Hospital.  On December 17, 2002, an ophthalmologist examined the plaintiff and concluded that another CT scan was necessary to determine whether the plaintiff should be referred to a surgeon.  Before the plaintiff underwent the CT scan, the

remaining portion of the pencil point came to the surface and plaintiff removed it.  The plaintiff seeks compensatory and punitive damages from the defendants in their individual capacities.

III. Discussion

The defendants move to dismiss this action on three grounds. The defendants argue that: (1) the plaintiff has failed to state a claim of deliberate indifference to medical needs, (2)  the plaintiff has not sufficiently alleged the personal involvement of defendant LaFrance in his claims, and (3) they are protected by qualified immunity.[2]

    A.    Deliberate Indifference to Serious Medical Needs

The plaintiff alleges that the defendants were deliberately indifferent to his need to have the pencil point removed from above his left eye.  The defendants argue that the plaintiff has failed to allege facts demonstrating that they were deliberately indifferent to his serious medical condition.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs.

---

[2] The defendants also argue that the plaintiff's negligence or malpractice claims are barred by Connecticut General Statutes § 4-165.  The plaintiff filed this action with the assistance of an attorney from the Inmates' Legal Assistance Program and clearly states that he brings this action against the defendants pursuant to 42 U.S.C. § 1983 for violations of his Eighth Amendment right to be free from deliberate indifference to his medical needs.  He does not allege that the defendants were negligent and does not invoke the court's supplemental jurisdiction over any state law claims.  The court does not construe the plaintiff's complaint as setting forth any negligence or malpractice claims.  Thus, the defendants' argument concerning such claims is moot.

See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Id. at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."  Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

   The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law.  Tomarkin, 534 F. Supp. at 1230-31.  Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983.  See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982).  In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment.  See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d

Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").  The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."

7

Hathaway, 37 F.3d at 66.  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants first contend that the plaintiff has failed to allege that his medical condition was serious.  The plaintiff alleges that he suffered from recurrent swelling of the left eyelid, pain and infectious drainage from the site where the pencil point entered his eyelid.  The plaintiff's allegations concerning the medical treatment he received at the time of and after the pencil point entered his eyelid indicate that the physicians and nurses found the injury "worthy of comment or treatment." Chance, 143 F.3d at 702.  In addition, the plaintiff has alleged that he suffered recurrent pain at the site where the pencil point entered his eyelid.  Although the plaintiff does not allege how the injury affected his daily activities, the court cannot conclude at this time that the plaintiff would not be able to offer evidence indicating that the injury had a significant effect on his daily life.  Accordingly, the motion to dismiss on the ground that the plaintiff did not suffer from a serious medical need as a result of having a pencil point stuck in his eyelid for almost eighteen months is denied.

The defendants also argue that the plaintiff has failed to allege that they were deliberately indifferent to his medical needs. The defendants contend that the plaintiff has conceded that he received medical treatment for his eye injury on the day it occurred and for the next year and a half after that day.

The plaintiff alleges that although the defendants initially treated him for the symptoms caused by the injury to his eyelid, they never attempted to determine if the pencil point was still in his eyelid. Furthermore, after a CT scan performed at a hospital during plaintiff's release from prison revealed that the pencil point was still in the left eyelid, the defendants failed to retrieve a copy of the CT scan, remove the pencil point or send the plaintiff to an ophthalmologist for further evaluation. The fact that the defendants responded to plaintiff's complaints and treated plaintiff's symptoms does not preclude a finding that the defendants were deliberately indifferent to a serious medical need. See Hemmings v. Gorczyk, 134 F.3d 104, 108-09 (2d Cir.1998) (prison medical staff's failure to diagnose classic symptoms of a ruptured Achilles tendon may be sufficient to satisfy deliberate indifference standard, even though prison medical staff did not deny him treatment and eventually referred prisoner to an outside specialist); Hathaway, 37 F.3d at 68 (defendant doctor's frequent examinations of plaintiff did not preclude finding of deliberate indifference because "course of treatment was largely ineffective, and [he] declined to do anything more to improve [plaintiff's]

situation."); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir.1974) (physician may be deliberately indifferent if s/he consciously chooses "an easier and less efficacious" treatment); Ruffin v. Deperio, 97 F.Supp.2d 346, 353 (W.D.N.Y.2000) (stating that deliberate indifference could be pleaded despite frequent treatment by prisoner's doctors where treatment was "cursory" or evidenced "apathy").

The court concludes that the plaintiff's allegations may be liberally construed to state a claim of denial of medical treatment for his serious medical condition and may constitute deliberate indifference to that condition. Based on these allegations, the court cannot conclude that the plaintiff would be unable to produce evidence to demonstrate deliberate indifference to a serious medical need. Accordingly, the defendants' motion to dismiss is denied on this ground.

    B.    <u>Personal Involvement</u>

The defendants argue that the plaintiff has failed to allege that defendant LaFrance was involved in the denial of medical treatment. The defendants contend that defendant LaFrance is not mentioned anywhere other than in the caption of the complaint. The court directs the defendants to paragraph eight, where the plaintiff describes defendant LaFrance as a nurse employed by Correctional Managed Health Care. In addition, the plaintiff includes allegations concerning defendant LaFrance's failure to obtain his medical records from Hartford Hospital and failure to

provide him with physician-ordered hot water, gauze and tape to apply to his wound.  (See Compl. at ¶¶ 26-27.)   Thus, it is clear that plaintiff has alleged the direct involvement of defendant LaFrance in the denial of medical care.  Accordingly, the motion to dismiss on the ground of lack of involvement by defendant LaFrance is denied.

    C.    Qualified Immunity

The defendants argue that they are entitled to qualified immunity.  The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the court concludes that "a violation could be made out on a favorable view of the parties submissions, the next sequential step is to ask whether the right was clearly established."  Id.  The determination of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."

Id.  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted."  Id.; see also Anderson v. Creighton, 438 U.S. 635, 640 (1987).

The court has determined above that, construing the allegations in the light most favorable to the plaintiff, the complaint states a claim against the defendants for deliberate or apathetic failure to provide needed medical care to the plaintiff for the injury to his eye.  The court concludes that the right to be free from deliberate indifference to serious medical needs, established in Estelle, 429 U.S. 97 and Hathaway, 37 F.3d 66, encompasses the conduct alleged in the plaintiff's complaint.  See Estelle. 429 U.S. at 104-05 (intentional delay or denial of medical treatment may state a claim of deliberate indifference to medical needs); Hathaway, 37 F.3d at 68 (defendant doctor's frequent examinations of plaintiff did not preclude finding of deliberate indifference because "course of treatment was largely ineffective, and [he] declined to do anything more to improve [plaintiff's] situation.").  Because the plaintiff's right to medical care was clearly established in 2001-2002, the motion to dismiss on the ground that the defendants are protected by qualified immunity is denied.  The defendants may renew this argument in a motion for summary judgment or at trial.

IV.  <u>Conclusion</u>

The Defendants' Motion to Dismiss [doc. # 14] is DENIED, and the following schedule is ordered:

1.  An answer to the amended complaint shall be filed by September 7, 2005.

2.  All discovery pursuant to the Federal Rules of Civil Procedure, Rules 26 through 37, shall be completed by January 15, 2006.

3.  Any dispositive motions shall be filed by February 15, 2006, and this matter will be trial ready September 1, 2006.

4.  If no dispositive motion is filed, the parties' Joint Trial Memorandum shall be filed by March 1, 2006 and this case will be deemed trial ready immediately thereafter.

5.  This case is referred to Magistrate Judge Margolis for a settlement conference at an appropriate time.

IT IS SO ORDERED.

/s/_____
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut: <u>August 24, 2005</u>**